# UNITED STATES DISTRICT COURT

SOUTHERN District of NEW YORK

Armen Babamian,

        Plaintiff,

- against -

The Goldman Sachs Group, Inc. Long Term Disability Plan, The Goldman Sachs Group, Inc. Medical Plan, The Goldman Sachs Group, Inc. Dental Plan, The Goldman Sachs Group, Inc. Basic Life Insurance Plan, and Life Insurance Company of North America,

        Defendant(s).

**SUMMONS IN A CIVIL CASE**

CASE NUMBER:

**06 CV 3041**

**JUDGE CHIN**

TO: (name and address of defendants)

SEE ATTACHED SHEET

**YOU ARE HEREBY SUMMONED** and required to serve upon PLAINTIFF'S ATTORNEY, (name and address)

    DeHaan, Busse, Binder & Binder, LLP.
    2805 Veterans Memorial Highway
    Suite 20
    Ronkonkoma, New York 11779

an answer to the complaint which is herewith served upon you, within __20__ days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint. You must also file your answer with the Clerk of this Court within a reasonable period of time after service.

**J. MICHAEL McMAHON**
CLERK

(BY) DEPUTY CLERK

APR 20 2006

DATE



The Goldman Sachs Group, Inc. Long Term Disability Plan
c/o Goldman Sachs
180 Maiden Lane, 24th Floor
New York, NY 10038          County of New York

The Goldman Sachs Group, Inc. Medical Plan
c/o Goldman Sachs
180 Maiden Lane, 24th Floor
New York, NY 10038          County of New York

The Goldman Sachs Group, Inc. Dental Plan
c/o Goldman Sachs
180 Maiden Lane, 24th Floor
New York, NY 10038          County of New York

The Goldman Sachs Group, Inc. Basic Life Insurance Plan
c/o Goldman Sachs
180 Maiden Lane, 24th Floor
New York, NY 10038          County of New York

Life Insurance Company of North America,
1601 Chestnut Street
Philadelphia, PA 19192      County of Philadelphia

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
ARMEN BABAMIAN,

                        Plaintiff,

   – against –

THE GOLDMAN SACHS GROUP, INC. LONG TERM
DISABILITY PLAN, THE GOLDMAN SACHS
GROUP, INC. MEDICAL PLAN, THE GOLDMAN
SACHS GROUP, INC. DENTAL PLAN, THE
GOLDMAN SACHS GROUP, INC. BASIC LIFE
INSURANCE PLAN, AND LIFE INSURANCE
COMPANY OF NORTH AMERICA,

                       Defendants.
----------------------------------------------------------------X

**Civil Action No.:**

**COMPLAINT**

      Plaintiff, Armen Babamian, by his attorneys, DEHAAN, BUSSE, BINDER & BINDER, L.L.P., for his Complaint against the Defendants, The Goldman Sachs Group, Inc. Long Term Disability Plan (the "LTD Plan"), The Goldman Sachs Group, Inc. Medical Plan (the "Medical Plan"), The Goldman Sachs Group, Inc. Dental Plan (the "Dental Plan"), The Goldman Sachs Group, Inc. Basic Life Insurance Plan (the "Life Insurance Plan") and Life Insurance Company of North America ("LINA"), hereby alleges as follows:

### JURISDICTION AND VENUE

      1.      Jurisdiction of the Court is based upon 29 U.S.C. §§ 1132(e)(1) and 1132(f), which give the District Courts jurisdiction to hear civil actions brought to recover benefits due under the terms of an employee welfare benefit plan. In addition, this action may be brought before this Court pursuant to 28 U.S.C. § 1331, which gives the District Court jurisdiction over actions that arise under the laws of the United States.

      2.      Under the Employee Retirement Income Security Act of 1974 (29 U.S.C. §§ 1001, *et seq.*) ("ERISA"), the long-term disability plan at issue in this litigation must contain provisions for administrative or internal appeal of denial of benefits. Plaintiff has exhausted all

administrative avenues of appeal and has received a final denial. Therefore, this matter is properly before this court for *de novo* judicial review under Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101 (1989).

3. Venue is proper in this district pursuant to 29 U.S.C. § 1132(e)(2) which allows an action under Title I of ERISA, as amended, to be brought in the district where the plan is administered, where the breach took place or where a defendant resides or may be found.

4. The Goldman Sachs Group, Inc. ("Goldman Sachs"), is the named Plan Administrator, with a home office located at 180 Maiden Lane, 24th Floor, New York, New York 10038. Therefore, venue is proper in the Southern District of New York because that is where the LTD Plan is administered.

## NATURE OF ACTION

5. This is a claim seeking a declaration that Plaintiff is entitled to disability income benefits pursuant to the terms and conditions of an employee benefit welfare plan.

6. The LTD Plan provides long term disability benefits to employees of Goldman Sachs. As such, the LTD Plan is an employee benefit welfare plan established and maintained by an employer or employee organization for the benefit of its employees, and ERISA applies to this action. Said benefits were effective at all times relevant hereto.

7. Claims for benefits are administered and paid through a Long Term Disability Group Policy, issued by Defendant, LINA. Defendant, LINA, has made all of the claims decisions in this matter.

8. This is also a claim seeking a declaration that Plaintiff is entitled to benefits, in the form of continuation of coverage under the terms and conditions of the other employee welfare benefit plans, including the Medical Plan, the Dental Plan and the Life Insurance Plan as a result of his disability.

## STANDARD OF REVIEW

9.     The LTD Plan in force at the time Plaintiff became disabled did not contain a grant of discretion to LINA or the Plan Administrator.

10.    As such, this Court must conduct a *de novo* review of the denial of Plaintiff's claim under Firestone Tire & Rubber Co. v. Bruch.

## THE PARTIES

11.    Plaintiff was born on February 11, 1946, is presently 60 years old, and is a resident of New Milford, New Jersey.

12.    Defendant, the LTD Plan, is an employee benefit welfare plan, as defined by ERISA, providing disability income benefits to eligible plan participants. Goldman Sachs is the named Plan Administrator and the agent for service of process, with a home office located at 180 Maiden Lane, 24th Floor, New York, New York 10038.

13.    Defendant, the Medical Plan, is an employee welfare benefit plan, as defined by ERISA, providing disability income benefits to eligible plan participants. Upon information and belief, Goldman Sachs is the named Plan Administrator of the Medical Plan, and the agent for service of process, with a home office located at 180 Maiden Lane, 24th Floor, New York, New York 10038.

14.    Defendant, the Dental Plan, is an employee welfare benefit plan, as defined by ERISA, providing disability income benefits to eligible plan participants. Upon information and belief, Goldman Sachs is the named Plan Administrator of the Dental Plan, and the agent for service of process, with a home office located at 180 Maiden Lane, 24th Floor, New York, New York 10038.

15.    Defendant, the Life Insurance Plan, is an employee welfare benefit plan, as defined by ERISA, providing disability income benefits to eligible plan participants. Goldman Sachs is the named Plan Administrator of the Life Insurance Plan, and the agent for service of process, with a home office located at 180 Maiden Lane, 24th Floor, New York, New York 10038.

16. Defendant, LINA, is an incorporated insurance company licensed to conduct the business of insurance in New York. Upon information and belief, LINA is the named Claims Administrator and insurer. LINA's address is 1601 Chestnut Street, Philadelphia, Pennsylvania 19192. LINA is a wholly owned subsidiary of CIGNA Group Insurance, on whose letterhead LINA communicated with Plaintiff.

### STATEMENT OF FACTS

Plaintiff's Occupation:

17. Plaintiff became an employee of Goldman Sachs on July 25, 1983. Plaintiff continued working for Goldman Sachs through January 4, 2004, on which date he became disabled. As such, Plaintiff was a covered participant in the LTD Plan.

18. Prior to and including January 4, 2004, Plaintiff was employed by Goldman Sachs as the Head Clerk of Training Assistance. In this capacity, Plaintiff worked on the floor of the New York Stock Exchange ("NYSE") and was responsible for supervising the clerical staff; keeping errors to a minimum; evaluating the clerks; and making sure the floor of the NYSE was fully staffed each day. The floor of the NYSE is a very loud work environment. Plaintiff was required to listen carefully to many people at one time, a task which is difficult for anyone, let alone someone who suffers from tinnitus. Plaintiff was also required to apply principles of logical thinking to define data, establish facts, draw conclusions and make decisions.

19. Plaintiff's average pre-disability income was about $125,000 per year.

20. For the period beginning prior to January 4, 2004, and at all relevant times hereto, Plaintiff, together with other regular employees of Goldman Sachs, was covered as a participant under the LTD Plan.

The Terms of the LTD Plan:

21. The LTD Plan provides for payment of monthly benefits to eligible employees, and is designed to protect employees against a loss of earned income during periods of extended

disability. Immediately prior to the onset of his disability, Plaintiff was an active employee working a minimum of 20 hours per week, and as such, was covered under the LTD Plan.

22. The monthly benefit is determined on a set percentage (66.67% of Disabled Employee's first $4,500 of monthly Covered Earnings and 40% of the Disabled Employee's remaining monthly Covered Earnings) of the employee's pre-disability earnings, with a maximum monthly benefit of $15,000. The monthly benefit is reduced by "Other Income Benefits," which includes benefits received pursuant to the Social Security Act.

23. In Plaintiff's case, the LTD Plan provides for a monthly benefit of approximately $5,366.83 per month, less the amount of "Other Income Benefits," as defined by the LTD Plan.

24. Long Term Disability benefits are to commence after a "Benefit Waiting Period" of six (6) months.

25. In the instant matter, Plaintiff's Long Term Disability benefits should have commenced around July 4, 2004.

26. The maximum benefit period under the LTD Plan extends to the claimant's 65th birthday, provided the period of total disability begins prior to age 62, which is the case herein.

27. The LTD Plan defines "Disability/Disabled" as follows:

> *An Employee will be considered Disabled if, because of Injury or Sickness,*
> 1. *he or she is unable to perform all the material duties of his or her regular occupation, or solely due to Injury or Sickness, he or she is unable to earn more than 80% of his or her Indexed Covered Earnings; and*
> 2. *after Disability benefits have been payable for 24 months, he or she is unable to perform all the material duties of any occupation for which he or she may reasonably become qualified based on education, training or experience.*

28. The LTD Plan also requires that a claimant be under the care of a Physician and provide satisfactory proof of Disability before benefits will be paid. LINA also requires "continued proof of the Employee's Disability for benefits to continue."

29. The LTD Plan gives LINA the right to examine Plaintiff. The LTD Plan states:

> ***Physical Examination and Autopsy***
> *The Insurance Company, at its own expense, will have the right to examine any person for whom a claim is pending as often as it may*

Page 5 of 15

> *reasonably require. The Insurance Company may, at its own expense, require an autopsy unless prohibited by law.*

30. The LTD Plan requires Plaintiff to apply for "Other Income Benefits," which includes Social Security Disability benefits.

31. Moreover, if Plaintiff does not apply for any "Other Income Benefits" (*e.g.*, Social Security Disability benefits), LINA can penalize Plaintiff by assuming the receipt of the "Other Income Benefits" and reducing the amount of the LTD benefits by that amount. Specifically, the LTD Plan states:

> *The Insurance Company will assume the Employee (or his or her dependents, if applicable) are receiving Other Income Benefits if they are eligible to receive them. These assumed benefits will be the amount the Insurance Company estimates the Employee (or his or her dependents, if applicable) may be eligible to receive.*
> *This assumption will not be made if the Employee gives the Insurance Company proof of the following events.*
> *1.   Application was made for these benefits*
> *2.   A Reimbursement Agreement is signed*
> *3.   Any and all appeals were made for these benefits or the Insurance Company determines further appeals will not be successful*
> *4.   Payments were denied.*

32. Further, LINA offers a Social Security Assistance program by which LINA, at its discretion, assists employees in applying for Social Security Disability Income benefits.

33. On June 21, 2004, Plaintiff signed a Reimbursement Agreement agreeing to reimburse the full amount of any overpayment within 30 days after receiving an award of any "Other Benefits."

Plaintiff's Disability:

34. Plaintiff was forced to stop working on January 4, 2004, due to tinnitus, sensorineural hearing loss, insomnia, anxiety and major depression.

35. Plaintiff was diagnosed with the above medical conditions by his various treating physicians.

36. In a questionnaire dated July 9, 2004, treating physician, Robert Green, M.D., who is Board Certified in Otolaryngology, stated that Plaintiff suffers from debilitating tinnitus

Page 6 of 15

and debilitating anxiety and sleep deprivation secondary to the tinnitus. Dr. Green noted that an audiogram revealed bilateral high frequency sensorineural hearing loss, and Plaintiff was first unable to work in January 2004. Dr. Green further opined that it is unpredictable when Plaintiff will be able to return to any level of work.

37. On January 19, 2004, treating physician, Jason Surow, M.D., who is Board Certified in Otolaryngology, performed a left myringotomy and tube placement. The post-operative diagnosis was acute otitis medial with prolonged fluid and sensorineural hearing loss.

38. In a Questionnaire dated June 29, 2004, Dr. Surow stated that Plaintiff has left sided tinnitus and suffers from anxiety and difficulty thinking. Dr. Surow also noted that it is unknown when Plaintiff will be able to return to any level of work.

39. In a Hearing Impairment Questionnaire dated March 25, 2005, treating physician, Jack Wazen, M.D., who is Board Certified in Otolaryngology, stated that Plaintiff suffers from sensorineural hearing loss and chronic daily tinnitus and has trouble with feeling lightheaded, balance, disequilibrium and spacial orientation. Dr. Wazen noted that Mr. Babamian's tinnitus interferes with attention and concentration, and he suffers from constant dizziness, which is precipitated by head movement, drunkenness, giddy, position change, floating, off balance, stress and swimming.

40. In a Psychiatric/Psychological Impairment Questionnaire dated March 2005, treating physician, Pritesh Shah, M.D., who is Board Certified in Psychiatry, diagnosed Plaintiff with mild to moderate major depression and insomnia, with a Global Assessment of Functioning score of 50. Dr. Shah noted that Mr. Babamian suffers from sleep disturbance, mood disturbance, anhedonia, blunt, flat or inappropriate affect, decreased energy, feelings of guilt/worthlessness and difficulty thinking or concentrating. Dr. Shah stated that Mr. Babamian's tinnitus interferes with his concentration and sleep, and he is preoccupied about this.

41. Dr. Shah further opined that Plaintiff has moderate limitations in his abilities to maintain attention and concentration for extended periods; perform activities within a schedule, maintain regular attendance and be punctual within customary tolerance; sustain ordinary routine without supervision; and complete a normal workweek without interruptions from

psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods.

42. Plaintiff has also gone to physical therapy for vestibular dysfunction. Physical therapy notes from Sportscare of Paramus indicate that Plaintiff suffers from imbalance, decreased stability, poor posture, decreased vestibuloocular reflex and impaired function.

43. Plaintiff has received, and continues to receive, appropriate medical treatment for his medical conditions from his treating physicians.

### PLAINTIFF'S FIRST CAUSE OF ACTION FOR LONG-TERM DISABILITY BENEFITS

44. With regard to Plaintiff's claims for benefits under the LTD Plan, he continued to work through January 4, 2004.

45. On January 4, 2004, Plaintiff was forced to stop working because of tinnitus, sensorineural hearing loss, insomnia, anxiety and major depression.

46. In compliance with the terms and conditions fo the LTD Plan, Plaintiff timely applied for long-term disability insurance benefits.

47. By letter dated August 24, 2004, LINA notified Plaintiff that it was denying his claim for long-term disability benefits.

48. This adverse decision was due to the fact that LINA overlooked the severity of Plaintiff's medical condition, misinterpreted the terms of the LTD Plan, and focused only on a self-serving and selective interpretation of the medical evidence.

49. Although the LTD Plan explicitly gives LINA the right to have Plaintiff examined by a physician of its choice, the carrier chose not to exercise this right.

50. By letter dated, December 13, 2004, Plaintiff's counsel notified LINA that Plaintiff intended to appeal the adverse determination and requested a copy of all relevant documents, including a copy of Plaintiff's claim file, so that Plaintiff could receive the full and fair review he was entitled to under ERISA.

51. By letter dated January 27, 2005, LINA notified Plaintiff's counsel that it was in the process of having Plaintiff's file copied.

52. LINA, by letter dated February 2, 2005, provided Plaintiff's counsel with a copy of Plaintiff's claim file and noted that it was unable to provide Plaintiff's counsel with its policies and procedure manual as it is proprietary and confidential, despite its explicit obligation to do so under 29 C.F.R. §2560.503-1(g)(1)(v)(A).

53. LINA failed to provide Plaintiff's counsel with a full and complete record of the processing of Plaintiff's claim.

54. After Plaintiff's counsel and LINA agreed to an extension of time for Plaintiff to submit additional medical documentation, by letter dated April 5, 2005, Plaintiff's counsel formally appealed LINA's adverse determination, submitted comments on LINA's denial, and submitted additional medical documentation regarding Plaintiff's total disability.

55. By letter dated April 22, 2005, LINA notified Plaintiff's counsel that it was in receipt of the additional information.

56. By letter dated June 9, 2005, LINA notified Plaintiff's counsel that Plaintiff's claim file was referred for an "Independent Peer Review."

57. LINA, by letter dated July 8, 2005, notified Plaintiff's counsel that it had not received the results of the "Independent Peer Review" and that it hoped to receive the information and make a decision within 30 days. LINA stated that it would notify Plaintiff's counsel within 30 days if additional information is needed.

58. By letter dated, July 11, 2005, Plaintiff's counsel noted that four (4) telephone messages were left for Mr. Sharp, a LINA employee, regarding LINA's July 8, 2005, correspondence. In said letter, Plaintiff's counsel indicated that they have not received a response.

59. By letter dated July 25, 2005, LINA notified Plaintiff's counsel that it was upholding its prior denial of Plaintiff's LTD claim.

60. This adverse decision was based on the "Independent Peer Review" conducted by Alan Neuren, M.D., an outside consultant selected by Professional Disability Associates

("PDA") and paid by LINA. Dr. Neuren opined, without the benefit of an actual examination, that while Plaintiff "has been diagnosed with tinnitus and secondary depression, it does not appear that there has been a focused attempt on treating his condition," despite the fact that Mr. Babamian has been treating with appropriate medical specialists.

61. As a file review doctor, Dr. Neuren never examined Plaintiff, and as such, his report is medically inferior and scientifically unreliable as compared to the opinions of the claimant's treating doctors. Moreover, Dr. Neuren had a pecuniary interest in finding Plaintiff not disabled.

62. By letter dated August 2, 2005, Plaintiff's counsel requested an updated claim file. In particular, Plaintiff's counsel requested all communications by, between and concerning LINA's peer review physician and requested that LINA address Plaintiff's counsel's questions regarding the completeness of the claim file provided on February 2, 2005. Plaintiff's counsel also advised LINA that they will be submitted additional documentation and comments and requested that LINA refrain from reviewing Plaintiff's claim until after said submission.

63. On August 17, 2005, Plaintiff's counsel received an updated claim file from LINA.

64. By letter dated October 21, 2005, Plaintiff's counsel submitted comments and additional medical documentation regarding Plaintiff's LTD claim.

65. By letter dated November 7, 2005, LINA notified Plaintiff's counsel that they received the appeal and are unable to make a determination. LINA inquired if Plaintiff intended to submit additional medical information.

66. By letter dated November 16, 2005, Plaintiff's counsel notified LINA that additional medical documentation was already submitted.

67. Plaintiff's counsel, by letter dated December 20, 2005, wrote to LINA to inquire into the status of LINA's review.

68. By letter dated December 23, 2005, LINA notified Plaintiff's counsel that Plaintiff's file is currently under review with their Associate Medical director and LINA will notify Plaintiff's counsel once the review is complete.

69. Finally, by letter dated February 1, 2006, LINA issued its final denial on Plaintiff's LTD claim.

70. This final adverse decision was based in part on a file review conducted by LINA's own in-house Associate Medical Director. The Associate Medical Director, who remains nameless, acknowledged that the diagnostic studies do indicate the presence of tinnitus and replicate the high frequency hearing loss, but concluded that the medical records do not establish a consistent functional impairment of activity for Plaintiff.

71. As a file review doctor, the Associate Medical Director never examined Plaintiff and as such, his report is medically inferior and scientifically unreliable as compared to the opinions of the claimant's treating doctors. Moreover, the Associate Medical Director had a pecuniary interest in finding Plaintiff not disabled.

72. For a third time, LINA chose to forego its right to have Plaintiff examined. As a result, the only scientifically and medically acceptable evidence has been provided by Mr. Babamian's treating doctors, all of whom found him to be totally disabled.

73. Plaintiff applied for and was awarded Social Security Disability Benefits. In a Notice of Decision dated July 29, 2005, United States Administrative Law Judge Frank Borda found Plaintiff to be disabled since January 5, 2004. A copy of this decision was forwarded to LINA on October 21, 2005.

74. The definition of disability under the Social Security Act is more restrictive than the definition of disability found in the LTD Plan, and requires that Plaintiff be "<u>unable to do your previous work or any other substantial gainful activity which exists in the national economy.</u>"

75. LINA failed to reconcile the conclusion of the Social Security Administration, that Mr. Babamian was totally disabled, with its conclusion that he was not totally disabled under a far less stringent definition of disability.

76. In addition, LINA receives a financial benefit from the Social Security Disability award. LINA is allowed to reduce any disability benefits payable under the LTD Plan by the

amount of "Other Income Benefits" received. Among the "Other Income Benefits" are Social Security Disability benefits.

77. In seeking to further its own pecuniary interest, LINA has denied Plaintiff of his right to a full and fair review of the denial of his claim, as required by ERISA.

78. LINA, as the claims administrator for the LTD Plan, is a fiduciary, as defined by ERISA, and owes a fiduciary duty to Plan participants such as Mr. Babamian.

79. The LTD Plan, as an employee welfare benefit plan under ERISA, also owes a fiduciary duty to Mr. Babamian and other Plan participants.

80. The LTD Plan's fiduciary duty requires that it select an insurer/claims administrator who will: administer claims in accordance with plan terms; fairly and objectively apply plan terms and evaluate medical evidence; and comply with ERISA and its regulations.

81. By allowing LINA to mishandle Plaintiff's claim as it did, the LTD Plan failed in its fiduciary duty to Mr. Babamian.

82. As such, the LTD Plan failed to adequately monitor, control and correct LINA's improper actions.

83. Fiduciaries have a statutory obligation, in performing their duties, to act prudently and solely in the interest of Plan participants and beneficiaries, and strictly in conformance with the provisions of the Plan.

84. The adverse claim decisions rendered in the instant action have been made by LINA, which has a pecuniary interest in denying claims.

85. Fiduciaries also have a statutory obligation to fairly interpret and construe the terms of the Plan and thereby make decisions in accordance with plan language.

86. LINA's decisions were not supported by the medical evidence and were not supported by the applicable plan language.

87. LINA's decisions in the instant claim were not supported by the evidence submitted with Plaintiff's claim.

88. Plaintiff was and remains disabled within the terms and conditions of the LTD Plan. Plaintiff is, therefore, entitled to receipt of Long-Term Disability benefits retroactive to January 4, 2004, and continuing to the present under the LTD Plan.

### PLAINTIFF'S SECOND CAUSE OF ACTION
### FOR MEDICAL BENEFITS

89. Plaintiff repeats and re-alleges the allegations contained in the Paragraphs number "1" through "88," as if fully set forth herein.

90. The Medical Plan provided that, if Plaintiff is disabled and receiving benefits under the LTD Plan, then he is entitled to continued coverage under the Medical Plan.

91. The LTD Plan's wrongful termination of his benefits has deprived Mr. Babamian of his medical insurance coverage under the Medical Plan, and has caused him to incur medical expenses that would have otherwise been covered under the Medical Plan.

92. As a result of Plaintiff's disability and entitlement to benefits under the LTD Plan, as detailed *supra*, he is entitled to reinstatement of his coverage under the Medical Plan and reimbursement for those medical expenses, including COBRA premiums, he incurred during the wrongful suspension of his medical insurance.

### PLAINTIFF'S THIRD CAUSE OF ACTION
### FOR DENTAL BENEFITS

93. Plaintiff repeats and re-alleges the allegations contained in the Paragraphs number "1" through "92" as if fully set forth herein.

94. The Dental Plan provided that, if Plaintiff is disabled and receiving benefits under the LTD Plan, then he is entitled to continued coverage under the Dental Plan for up to 29 months.

95.     The LTD Plan's wrongful termination of his benefits has deprived Mr. Babamian of his dental insurance coverage under the Dental Plan, and has caused him to incur dental expenses that would have otherwise been covered under the Dental Plan.

96.     As a result of Plaintiff's disability and entitlement to benefits under the LTD Plan, as detailed *supra*, he is entitled to reinstatement of his coverage under the Dental Plan and reimbursement for those dental expenses he incurred during the wrongful suspension of his dental insurance.

### PLAINTIFF'S FOURTH CAUSE OF ACTION
### FOR LIFE INSURANCE

97.     Plaintiff repeats and re-alleges the allegations contained in the Paragraphs number "1" through "96," as if fully set forth herein.

98.     The Life Insurance Plan provided that, if Plaintiff is disabled and receiving benefits under the LTD Plan, then he is entitled to continued coverage and waiver of life insurance premiums under the Life Insurance Plan until age 65.

99.     The LTD Plan's wrongful termination of his benefits has deprived Mr. Babamian of his life insurance coverage under the Life Insurance Plan.

100.    As a result of Plaintiff's disability and entitlement to benefits under the LTD Plan, as detailed *supra*, he is entitled to reinstatement of his coverage under the Life Insurance Plan.

WHEREFORE, Plaintiff respectfully requests the following relief:

a.      That the Court declare and then determine that, under the terms of the LTD Plan, Plaintiff's disability began on January 4, 2004, and that he continues, without interruptions, to be disabled within the terms of the LTD Plan;

b.      That, after making such a determination, the Court grant Plaintiff appropriate legal

relief and order Defendants, the LTD Plan and LINA, to compensate Plaintiff for his disability in accordance with the terms of the LTD Plan, retroactive to January 4, 2004;

c.  That, after making such a determination, the Court grant Plaintiff appropriate legal and equitable relief and order Defendants to compensate Plaintiff in accordance with the terms of the Medical Plan, retroactive to January 4, 2004;

d.  That after making such a determination, the Court grant Plaintiff appropriate legal and equitable relief and order Defendants to compensate Plaintiff in accordance with the terms of the Dental Plan, retroactive to January 4, 2004;

e.  That after making such a determination, the Court grant Plaintiff appropriate legal and equitable relief and order Defendants to continue Plaintiff's Life Insurance coverage in accordance with the waiver of premium provision of the Life Insurance Plan;

f.  That the Court award Plaintiff his attorney's fees pursuant to ERISA, 29 U.S.C. §1132(g); and

g.  That Plaintiff receive such other necessary, proper and equitable relief, including interest, costs and disbursements, as to which he may be entitled.

Dated: April 14, 2006
Ronkonkoma, New York

By: DeHaan, Busse, Binder & Binder, LLP
_____
John W. DeHaan (8863)
2805 Veterans Memorial Highway
Suite 20
Ronkonkoma, New York 11779
Telephone: (631) 648-4700
Facsimile: (631) 670-2569